AHO *v.* CONDA.

1. Automobiles—New Trial—Head-on Collision—Evidence.
   Trial court's denial of new trial in case arising out of a head-on automobile collision was not an abuse of discretion, where the evidence as to the collision was in conflict in several particulars and the verdict for plaintiff was not against the great weight of the evidence.

2. New Trial—Discretion of Court—Weight of Evidence.
   Generally the granting of a new trial rests in the sound discretion of the court and it will be granted only where the verdict is manifestly against the clear weight of the evidence.

3. Damages—Question for Jury.
   The question of damages is fundamentally a jury question.

4. Same—Presumptions.
   It is presumed that if the damages awarded by a jury were excessive, relief would have been granted by the trial court.

5. Same—Great Weight of Evidence—Prejudice—Sympathy—Excessive Verdict.
   The Supreme Court will not substitute its judgment in regard to the amount of damages, unless the amount is against the great weight of the evidence or the record sustains the fact that it was secured by prejudice, sympathy or improper methods, or the amount is so excessive as to shock the judicial conscience or common sense of mankind.

---

References for Points in Headnotes

[1] 39 Am Jur, New Trial §§ 129, 134.
[2] 39 Am Jur, New Trial §§ 73, 131.
[3] 15 Am Jur, Damages § 362.
[4] 15 Am Jur, Damages § 203 *et seq.*
[5] 3 Am Jur, Appeal and Error § 893.
[6] 15 Am Jur, Damages §§ 206, 209.

6. SAME—LIFE EXPECTANCY—EVIDENCE.

 Verdict of $5,000 for personal injuries to 78-year-old plaintiff with a life expectancy of 5.718 years *held*, not excessive, under evidence presented.

Appeal from Houghton; Brennan (Leo J.), J. Submitted October 4, 1956. (Docket No. 45, Calendar No. 46,884.) Decided December 28, 1956.

Case by Andrew Aho against Florence Conda for damages for personal injuries sustained in automobile collision. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Messner & LaBine,* for plaintiff.

*John D. Shea,* for defendant.

KELLY, J. This appeal involves a head-on collision between plaintiff's and defendant's automobiles as both parties were on their way to work about 7:15 o'clock in the morning of September 23, 1954. Plaintiff was driving north on Cliff road and defendant was driving south. Cliff road is a black-top highway, wide enough for 2 cars, with a slight crown in the middle, and shoulders on both sides.

Plaintiff's contention that defendant crossed the center line of the road and drove into plaintiff's right-of-way was sustained by a jury that awarded damages in the amount of $5,000. Defendant asks this Court to determine whether the verdict was contrary to the great weight of the evidence, and whether the damages allowed were excessive.

Plaintiff testified that while driving at a moderate rate of speed he observed defendant approaching him at 70 miles per hour; that defendant's car went off the pavement on her side of the road and that she pulled her car back into the road, crossed the center line, and drove into plaintiff's car as he was

proceeding north on his side of the road. Plaintiff further testified that after the accident he observed the marks on the shoulder where defendant's car left the road and that said marks were 70 to 100 feet to the north of the accident.

Reuben Jokela, who was employed by a logger who also employed plaintiff, arrived at the scene of the accident shortly after it occurred. He testified:

"Mr. Aho's car was off to the right hand side of the center line facing north. The rear wheel of his car was off the black-top on his own right-hand side, the easterly side of the road. * * * No part of the front end of his car was over the westerly half of the highway. * *. *. We walked around and checked the whole area. * * * I would say at least 1 front wheel of the Chrysler (defendant's) car was over across the middle line. * * * The front end of her car was damaged considerably. * * * There was a wide skid mark to the rear, that is to the north of the Chrysler automobile off the black-top, in the gravel or sand. It had turned up a considerable amount of dirt. The skid mark was about 25 feet back from the car. * * * Judging by the glass and debris, I would say the cars had come together east of the center line, that would be on Mr. Aho's side of the road."

Sulo Jutila, an automobile mechanic in a gasoline station, was a passenger in Jokela's car on the morning of the accident. He testified that no part of the Aho automobile was over onto the westerly half of the black-top; that the left front wheel of the Chrysler car was over on Mr. Aho's side of the highway; that the right rear wheel of plaintiff's automobile was off the black-top; that there were no skid marks in back of plaintiff's car but that there were marks which commenced 50 to 100 feet in back of defendant's automobile on the shoulder of the road, which appeared to be skid marks; that the point of collision

was on plaintiff's side, judging from the center of the road and the position of the cars; that both cars were damaged considerably.

Defendant testified that when the 2 cars were very close, Mr. Aho's car swerved to her side of the road; that she blew the horn and drove to the side of the road; that he came right at her and that is where the collision happened.

Raymond Norkol was called by defendant as a witness. He testified that he was employed by the sales and service company where defendant purchased her car and that on the morning of the accident he was called to the scene with a wrecker. He further said:

"When I picked up the Conda car, it was on the right-hand side of the road. In my opinion, the car was in such condition that it could not have been moved under its own power. There was a little glass on the road in front of the car. It was more or less in the center, I would say. * * * I got the call early in the morning and didn't pay much attention to the time. * * * The Chevrolet (plaintiff's car) was moved when I got there."

Theodore Rogers, the sheriff of Keweenaw county, who was called to the scene of the accident shortly after it happened, testified:

"There were a few tire marks by Mrs. Conda's car where it had slid when it was turned. There were no other marks on the shoulder or on the black-top near the cars. I do not think the cars had been moved before I got there. * * * Mrs. Conda's car was on the right-hand side of the road turned at a little angle. Her car was completely on the right-hand side of the road. Mr. Aho's car was completely on the black-top on the left-hand side of the road."

Defendant claims the verdict is contrary to the great weight of the evidence and that the court erred

in denying defendant's motion for a new trial, because:

1. Defendant had driven a car to work for 17 years and was familiar with the road, and, as a registered nurse employed in the operating room, was "used to meeting emergencies;" that her car was new, with the latest safety equipment, while plaintiff's car was 18 years old; that plaintiff's eyesight was 20/40 and his blood pressure 220/100, and "he had signs of hardening of the arteries."

2. Defendant testified that she had plaintiff's car under observation for 1 mile before the accident; that plaintiff said defendant's car disappeared for a second and then reappeared on a knoll about 250 feet from the scene of the accident; that the sheriff testified that at the scene of the accident the visibility looking north and south is very good, that you can see 1/2 mile or more on either side.

3. Defendant testified that she swerved toward her side of the road and blew the horn; that there were skid marks on her side of the road indicating that she had applied the brakes; that there were no skid marks to the rear of plaintiff's automobile, thereby showing that she did, and he did not, take evasive action to avoid the collision.

4. The testimony of Jokela and Jutila, taken by deposition, was "strikingly similar as far as placing the blame on the defendant, Mrs. Conda, and not on their co-worker, Andrew Aho."

5. Mr. Jokela testified that plaintiff "was bleeding about the face, but not too bad," and Jutila testified that he was "bleeding profusely from the face;" that Jokela testified he had a conversation with defendant at the scene of the accident and that Jutila testified that defendant was not at the scene when they arrived.

6. The sheriff's testimony in regard to the position of the cars when he arrived at the scene of the accident was favorable to defendant.

Appellant's contentions as above set forth, could have been and probably were argued before the jury. They are points that disclose a conflict in the evidence. The trial court in his decision denying a new trial reviewed at length the evidence in this case and pointed to these conflicts. He stated:

"These are merely examples of the conflicting testimony prevailing in this case. There were other discrepancies but it would serve no useful purpose to set these out in this opinion. The court heard the evidence and has had the benefit of reading a transcript of the testimony, and it is apparent that the verdict of the jury was not contrary to the great weight of the evidence. This point has not been well taken, and there is an abundance of evidence supporting all of the necessary and requisite elements of the claim for damages."

This Court in *Van Lierop* v. *Chesapeake & Ohio R. Co.*, 335 Mich 702, 713, stated:

"It is the general rule that the granting of a new trial rests on the sound discretion of the trial court. It is only in cases where the verdict is manifestly against the clear weight of the evidence that a new trial will be granted."

This Court holds that the trial court did not err in refusing to grant a new trial, because the verdict was not against the great weight of the evidence.

Appellant contends that the damages were excessive. This Court has held that the question of damages is fundamentally a jury question. *Rich* v. *Dailey Creamery Co.*, 303 Mich 344. The presumption will be indulged that if the damages were excessive, relief would have been granted by the lower court. *Briggs* v. *Milburn*, 40 Mich 512. This Court

will not substitute its judgment in regard to the amount of damages, unless that amount is against the great weight of the evidence or the record sustains the fact that it was secured by prejudice, sympathy, or improper methods, or the verdict is so excessive as to shock the judicial conscience or common sense of mankind. *Bathke* v. *City of Traverse City,* 308 Mich 1; *Denny* v. *Garavaglia,* 333 Mich 317; *Samuelson* v. *Olson Transportation Co.,* 324 Mich 278.

The verdict was not secured by improper means or methods and is not so excessive as to shock judicial conscience or common sense. The record justifies the trial court's statement that:

"Even though plaintiff is 78 years of age and has only a life expectancy of 5.718 years, the amount of the verdict is not excessive. The court concludes that the jury verdict should not be set aside for this reason."

Affirmed, costs to appellee.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, CARR, and BLACK, JJ., concurred.

BOYLES, J., took no part in the decision of this case.